# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 21, 2014          Decided May 9, 2014

No. 12-5380

IN RE: LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE
TAX REFUND LITIGATION-MDL 1798,

OSCAR GURROLA, ET AL.,
APPELLANTS

ANTHONY BELLONI,
APPELLEE

ROSALVA GURROLA AND BERNADETTE CAROL DUFFY,
APPELLANTS

v.

UNITED STATES OF AMERICA, ACTING BY AND THROUGH THE
INTERNAL REVENUE SERVICE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-mc-00014)

———

*Michael A. Bowen* argued the cause for appellants Neiland
Cohen, et al. *Benjamin F. Johns* argued the cause for appellants
Oscar Gurrola, et al. With them on the briefs were *Jonathan W.
Cuneo*, *Robert J. Cynkar*, *William H. Anderson*, *Nicholas E.*

*Chimicles*, *Marc B. Dorfman*, *Mark C. Rifkin*, *Henry D. Levine*, *Charles Tiefer*, and *Randy J. Hart*.

*Ellen P. DelSole*, Attorney, U.S. Department of Justice, argued the cause for appellee United States of America. With her on the brief were *Tamara W. Ashford*, Principal Deputy Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Gilbert S. Rothenberg* and *Teresa E. McLaughlin*, Attorneys.

Before: TATEL and BROWN, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the court filed by *Senior Circuit Judge* RANDOLPH.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* BROWN.

**I.**

RANDOLPH, *Senior Circuit Judge*: This appeal has its genesis in 26 U.S.C. § 4251, which imposes an excise tax "on amounts paid for . . . toll telephone service." Telephone service is taxed only if its price "varies in amount with the distance and elapsed transmission time of each individual communication." *Id.* § 4252(b). Technological advances of the last few decades changed cost structures and, as a result, telephone companies began charging only by elapsed transmission time. The Internal Revenue Service, however, continued to collect the tax.

Beginning in 2005, the Service lost a series of cases challenging the tax. Five courts of appeals, including this court, held that § 4251 did not permit the Service to tax telephone

service with distance-invariant pricing.[1] Around that time, the three plaintiffs in this consolidated appeal (Cohen, Sloan, and Gurrola) filed separate putative class-action suits challenging the tax. Initially, plaintiffs raised a variety of constitutional and statutory claims, seeking refunds and other relief. *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.* (*Long Distance Tel. I*), 539 F. Supp. 2d 281, 288-89 (D.D.C. 2008). The Judicial Panel on Multidistrict Litigation consolidated the suits in the District Court for the District of Columbia. *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348 (J.P.M.L. 2006).

After two of the three plaintiffs—Cohen and Sloan—filed their complaints, the Service issued without notice and comment Notice 2006-50, 2006-1 C.B. 1141 (May 26, 2006). Citing the losses in the courts of appeals, the Notice declared that the Service would no longer tax telephone service priced without regard to distance, *id.* §§ 1(a), 4(c), and established a procedure to refund illegally collected excise taxes, *id.* § 5. Taxpayers could "request a credit or refund . . . on their 2006 Federal income tax returns." *Id.* § 5(a)(2). The Notice allowed taxpayers to claim as a refund either the amount of taxes actually overpaid or a safe harbor amount for which no documentation was required. *Id.* § 5(c).

Cohen and Sloan amended their complaints to add claims relating to Notice 2006-50 under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq*. *See Long Distance Tel. I*,

---

[1] *Fortis, Inc. v. United States*, 447 F.3d 190 (2d Cir. 2006) (per curiam); *Reese Bros., Inc. v. United States,* 447 F.3d 229 (3d Cir. 2006); *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328 (11th Cir. 2005); *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005); *OfficeMax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005).

539 F. Supp. 2d at 288-89. Sloan squarely raised both substantive and procedural challenges, while Cohen made only a substantive APA argument. *Id.* The district court dismissed all three complaints. *Id.* at 287. Regarding the APA claims, the district court held that Notice 2006-50 was not judicially reviewable because it was "a statement of internal IRS policy without the force and effect of law." *Id.* at 307; *see id.* at 306-11.

Plaintiffs appealed the dismissal of their APA claims, and a panel of this court reversed,[2] concluding that Notice 2006-50 "operates as a substantive rule that binds the IRS, excise tax collectors, and taxpayers." *Cohen v. United States* (*Cohen I*), 578 F.3d 1, 6 (D.C. Cir. 2009). The court also rejected the Service's arguments that the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Tax Anti-Injunction Act, 26 U.S.C. § 7421, deprived it of jurisdiction. 578 F.3d at 12-14. Judge Kavanaugh dissented from the panel opinion. He argued that plaintiffs' APA claims were barred by the Declaratory Judgment Act, which prohibits suits seeking declaratory relief "with respect to Federal taxes." *See id.* at 17-20.

The full court granted the Service's petition for rehearing *en banc* to consider whether the Tax Anti-Injunction Act or the Declaratory Judgment Act barred the court from hearing plaintiffs' suits. *Cohen v. United States*, 599 F.3d 652 (D.C. Cir. 2010) (*en banc*) (per curiam). The court determined that plaintiffs' APA claims could proceed. *Cohen v. United States* (*Cohen II*), 650 F.3d 717, 736 (D.C. Cir. 2011). Adopting much of the *Cohen I* panel's reasoning, the *en banc* majority ordered "the district court [to] consider the merits of [plaintiffs'] APA claim on remand." *Id.* Judge Kavanaugh, joined by Chief Judge

---

[2] Cohen (but not Gurrola or Sloan) also appealed the dismissal of his refund claims. We affirmed that part of the district court's judgment. *Cohen v. United States*, 578 F.3d 1, 14-15 (D.C. Cir. 2009).

Sentelle and Judge Henderson, dissented, arguing that an APA suit was unavailable because tax refund suits afforded plaintiffs an adequate legal remedy. *Id.* at 738-42.

On remand, the district court held that Notice 2006-50 was promulgated without notice and comment in violation of the APA. *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.* (*Long Distance Tel. II*), 853 F. Supp. 2d 138, 142-43 (D.D.C. 2012). Having found a violation of the APA, the district court prospectively vacated the Notice and remanded to the Service. *Id.* at 146. The court declined to set a timetable for any further action by the Service because no "law unequivocally requires such action." *Id.*

Plaintiffs then moved for entry of final judgment and an interim award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b) & (d). The district court entered final judgment in favor of plaintiff Sloan only on her procedural APA claim. It entered judgment in favor of the government against both Cohen, who raised only substantive APA challenges that the court did not need to address, and Gurrola, who failed to raise any APA arguments. *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.* (*Long Distance Tel. III*), 901 F. Supp. 2d 1, 5-7 (D.D.C. 2012). The district court denied plaintiffs' motion for attorney's fees. It first found that plaintiffs could not recover fees under a "common benefit" theory because the litigation's costs could not be shifted to its large, difficult-to-ascertain class of beneficiaries with any exactitude. *Id.* at 8-10. The court rejected plaintiffs' alternative argument for fees under 28 U.S.C. § 2412(d) because it found the government's position was "substantially justified." *Id.* at 11-12. Plaintiffs have appealed from the court's refusal to direct the Service on remand to issue a refund rule and from its denial of their interim request for fees.

## II.

The government argues that we have no jurisdiction to hear plaintiffs' appeal because district court orders remanding to agencies are not final appealable decisions. *See* 28 U.S.C. § 1291; *Sierra Club v. USDA*, 716 F.3d 653, 656-57 (D.C. Cir. 2013).[3] Typically, that is true. A remand order usually allows the agency to correct mistakes in earlier proceedings. Delaying review prevents duplicative appeals from both a district court's remand order and an agency's later action. *See In re St. Charles Pres. Investors, Ltd.*, 916 F.2d 727, 729 (D.C. Cir. 1990) (per curiam).

But the rule is not absolute. The government may appeal these sorts of remand orders because, unlike most private parties, the government may wind up with "no opportunity to appeal" later, after it has conducted proceedings in compliance with the remand order. *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 330 (D.C. Cir. 1989); *see Sierra Club*, 716 F.3d at 657. Plaintiffs here face a similar predicament. The Service has not taken any reviewable action in the two years since the district court's remand order. Indeed the Service has no reason to act. The three-year statute of limitations for filing refund claims, 26 U.S.C. § 6511(a), has likely expired for most potential claimants and there is no need to streamline the refund process for hundreds of millions of taxpayers as there was when Notice 2006-50 issued eight years ago. We find it particularly important that at oral argument government counsel conceded that the Service is "not planning" to engage in future rulemaking on the subject. Oral Arg. Tr. at 23:16. In these unusual circumstances, treating the district court's remand order as

---

[3] Plaintiffs do not argue that the denial of attorney's fees is, in itself, a final appealable decision. *See Pigford v. Veneman*, 369 F.3d 545 (D.C. Cir. 2004).

unappealable would "effectively preclude[]" plaintiffs from ever challenging the district court's decisions. *Sierra Club*, 716 F.3d at 658; *see Ringsby Truck Lines, Inc. v. United States*, 490 F.2d 620 (10th Cir. 1974).

We may, in any case, bypass complex questions dealing with appellate jurisdiction when addressing the merits would not require us to "reach[] a question of law that otherwise would have gone unaddressed." *See Sherrod v. Breitbart*, 720 F.3d 932, 936-37 (D.C. Cir. 2013) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1988)). The law governing plaintiffs' challenges is well-established and renders the merits "plainly insubstantial." *Id.* (quoting *Norton v. Matthews*, 427 U.S. 524, 530 (1976)). In such a case we may proceed to decide the merits.

The Supreme Court has endorsed this "practical" approach to finality, particularly in the "twilight zone" where "it is impossible to devise a formula to resolve all marginal cases." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152 (1964); *see also* 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FED. PRACTICE & PROCEDURE: JURISDICTION § 3913 (2d ed. 1992). We therefore turn to the merits of plaintiffs' claims, recognizing that in the mine run of decisions remanding to an agency, § 1291 will foreclose a private-party appeal.

## III.

Plaintiffs allege that the district court erred in vacating Notice 2006-50 and remanding, without specifically instructing the Service to promulgate a new refund procedure. When, as here, a rule is promulgated without notice and comment, the APA directs the court to "hold unlawful and set aside [the] agency action." 5 U.S.C. § 706(2). The APA also permits a court to "compel agency action unlawfully withheld." *Id.* § 706(1).

But that provision applies only to "*discrete* action" that is "legally *required . . .* about which an official had no discretion whatever." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004) (internal brackets and quotation marks omitted). Consequently, courts issue "detailed remedial orders" to an agency "[o]nly in extraordinary circumstances." *N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 20 (D.C. Cir. 2008).

Plaintiffs have not satisfied § 706(1)'s exacting requirements. 26 U.S.C. § 7422(a), which plaintiffs cite, at most requires *some* form of tax refund procedure. Yet one already exists. *See* 26 C.F.R. §§ 301.6401-1 *et seq*. Section 7422 does not come close to requiring what plaintiffs seek—a specific refund procedure for the telephone excise tax. Even if the code did require some excise-tax-specific procedure, it affords the Secretary of the Treasury great discretion to design the details: what procedural requirements to impose, how much time must elapse before a claimant may sue, and which forms may be used. *Cf. Comm'r v. Portland Cement Co.*, 450 U.S. 156, 169 (1981) (noting the Court's "customary deference" to treasury regulations administering the tax code). Under *Norton*, that discretion forecloses the detailed order plaintiffs seek. 542 U.S. at 63-64.

Plaintiffs argue that here, unlike in *Norton*, the Service has already acted and therefore must correct its error. But that distinction—between acting and failing to act—is irrelevant under the APA. Courts review both types of "agency action" the same way. *Id.* at 62 (quoting 5 U.S.C. §§ 702, 704, 706). A court's authority to remedy either type of error depends entirely on the underlying statutory obligation of the agency. *Id.* at 62-63. Here, the only statutory failure was of notice and comment. Absent a statutory duty to promulgate a new rule, a court cannot order it.

9

**IV.**

**A.**

This brings us to the request for attorney's fees. The government contends that plaintiffs may recover attorney's fees only under 26 U.S.C. § 7430, which applies to "proceeding[s] . . . [brought] in connection with the determination, collection, or refund of any tax." Plaintiffs argue that the general fees provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412(b) & (d), apply.

Both statutes allow only a "prevailing party" to recover fees. A prevailing party is one who obtains a "material alteration of the legal relationship of the parties" through a "judgment on the merits" or a "settlement agreement enforced through a consent decree." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (internal quotation marks omitted). Gurrola and Cohen, having failed to obtain either judgments in their favor or settlements, are not prevailing parties. *Long Distance Tel. III*, 901 F. Supp. 2d at 11.

Plaintiffs protest that this reasoning is overly formalistic because both Gurrola and Cohen raised potentially meritorious substantive challenges to Notice 2006-50 that the district court never reached. We disagree. One does not become a prevailing party "by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined) . . . without obtaining any judicial relief." *Buckhannon Bd. & Care Home*, 532 U.S. at 606. Gurrola and Cohen never obtained "judicial relief" and so they are not entitled to fees.

Sloan is a prevailing party. But we do not decide whether her request for fees is governed by 26 U.S.C. § 7430 or 28

U.S.C. § 2412 because she cannot succeed under either provision. A party may not recover fees under § 7430 without first exhausting administrative remedies. Sloan does not argue that she has done so here. That leaves § 2412.

**B.**

Sloan argues that she may recover attorney's fees under 28 U.S.C. § 2412(b), which makes the government liable for fees "to the same extent that any other party would be liable under the common law." She invokes the common benefit theory, which applies when "the burden of litigation . . . benefitted others who in equity should share the expenses." 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2675 (3d ed. 1998). But that theory "ill suits litigation in which the purported benefits accrue to the general public" and is available only when "the class[] of beneficiaries [is] small in number and easily identifiable," "[t]he benefits c[an] be traced with some accuracy, and there [i]s reason for confidence that the costs c[an] indeed be shifted with some exactitude to those benefiting." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 264 n.39 (1975); *see also Grace v. Burger*, 763 F.2d 457, 459-60 (D.C. Cir. 1985) (holding that "the common benefit theory is inapplicable in cases . . . where plaintiffs seek injunctive relief against the government" (quoting *Trujillo v. Heckler*, 587 F. Supp. 928, 930 (D. Colo. 1984))).

None of the *Alyeska Pipeline* criteria are satisfied here. The class of beneficiaries of this litigation is potentially massive, including millions of taxpayers who used telephones. But that class is nearly impossible to ascertain with any precision because it excludes taxpayers who already claimed a refund and those who were never entitled to a refund. Even if the class could be identified, the benefits of the litigation cannot be

estimated, much less determined with exactitude. That is because Sloan did not secure refunds but, at most, made it slightly easier to obtain one. Sloan makes no attempt to estimate the value of the procedural benefit her litigation actually conferred.[4]

**C.**

Sloan also argues that she is entitled to attorney's fees under 28 U.S.C. § 2412(d), which awards fees to parties prevailing against the government "unless the court finds that the position of the United States was substantially justified." Whether the government's position "was substantially justified shall be determined on the basis of the record (including . . . action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." *Id.* § 2412(d)(1)(B). The government's position is substantially justified if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *LePage's 2000, Inc. v. Postal Regulatory Comm'n*, 674 F.3d 862, 866 (D.C. Cir. 2012) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Substantial justification is a "multifarious . . . question, little susceptible of useful generalization." *Underwood*, 487 U.S. at 562. Because the inquiry is fact-intensive and "the district court may have insights not conveyed by the record" we review decisions awarding or denying fees under 28 U.S.C. § 2412(d) for abuse of discretion. *Id.* at 557-63.

---

[4] In her reply brief Sloan seems to suggest *Alyeska Pipeline*'s criteria do not apply because the government is not entitled to the money it collected under the excise tax. Sloan has not cited, and we have not found, any authority supporting that argument.

Although the question is close we do not think the district court abused its discretion in denying fees. The district court found the government's position to be substantially justified because several circuit judges agreed with the government and dissented from the *Cohen I* and *Cohen II* opinions. *Long Distance Tel. III*, 901 F. Supp. 2d at 12.

Sloan cites opinions suggesting that an earlier dissent does not conclusively show the government's position was substantially justified. But those cases acknowledge that prior dissents are still "properly considered when conducting th[e substantial justification] inquiry." *Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995); *see id.* at 884-86; *EEOC v. Clay Printing Co.*, 13 F.3d 813, 816 (4th Cir.1994).

Here, the existence of several dissenting opinions is particularly persuasive evidence of substantial justification for two reasons. First, the court granted *en banc* rehearing, which is reserved for "question[s] of exceptional importance" or to preserve "uniformity of the court's decisions." FED. R. APP. P. 35(a). If existing law had plainly favored plaintiffs, there would have been no cause for *en banc* review, even of a high-stakes problem. *See Coal. for Responsible Regulation, Inc. v. EPA*, No. 09-1322, 2012 WL 6621785 (D.C. Cir. Dec. 20, 2012) (Sentelle, C.J., concurring in the denials of rehearing *en banc*).

Second, the legal issues in the earlier appeals were difficult and amenable to reasonable disagreement. Whether Notice 2006-50 was a reviewable final rule or a policy statement, *Cohen I*, 578 F.3d at 6-12, is an amorphous and challenging legal question. *See Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 946 (D.C. Cir. 1987). Similarly, the meaning of the Declaratory Judgment Act is hardly self-evident, because the Act's text is "intrinsically ambiguous." *See Cohen II*, 650 F.3d at 727-31.

13

Against that evidence of substantial justification, Sloan argues that the Service unjustifiably failed to acquiesce to the Eleventh Circuit's *American Bankers* decision invalidating the excise tax. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328 (11th Cir. 2005). But that conduct is irrelevant because it did not occur "in the civil action for which fees . . . are sought." 28 U.S.C. § 2412(d)(1)(B). Furthermore, Sloan conceded at oral argument that the government complied with the *American Bankers* court's order. *See* Oral Arg. Tr. at 14:20-17:5. We have recognized agencies' rights not to acquiesce in one court's legal conclusions in a different case. *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1261-62 (D.C. Cir. 1996) (Rogers, J., dissenting); *see id.* at 1260 n.3 (majority agreeing).

Sloan also argues that the Service's position was not substantially justified because it promulgated Notice 2006-50 without notice and comment. Standing alone, a notice and comment violation establishes that the government's conduct was arbitrary and capricious. But "arbitrary and capricious conduct is not per se unreasonable" for purposes of attorney's fees. *Andrew v. Bowen*, 837 F.2d 875, 878 (9th Cir. 1988).

It is true that the panel and *en banc* majority opinions described the Service's position in harsh terms. On that basis, one might reasonably conclude that the Service's position was not substantially justified. *See, e.g.*, *LePage's 2000*, 674 F.3d at 867-68. But one might also reasonably conclude that, absent other factors, dissenting opinions on difficult questions are sufficient evidence of substantial justification. We therefore cannot say that the district court abused its discretion. The judgment below is

*Affirmed*.

BROWN, *Circuit Judge*, *concurring in part and dissenting in part*. This is a complicated and frustrating case. It has lasted five years and accomplished nothing. In this litigation, the Internal Revenue Service (IRS) has lost every round, but, as the court's opinion confirms, the odds are always with the house.

Round one was *Cohen I*, 578 F.3d 1 (D.C. Cir. 2009), where we determined the taxpayers could move forward with a challenge to Notice 2006-50. The Service, rocked but undaunted, tried again with a larger group of judges in *Cohen II*, 650 F.3d 717 (D.C. Cir. 2011) (en banc), arguing it was immune to suit outside the narrow confines of the refund process. Again, it failed—by split decision, the taxpayers won. On remand—round three—the district court found the IRS had violated the APA and vacated the offending notice, but it declined to set any timetable for further action.

The Service announced the demise of the refund notice and resolutely refused to take any other remedial action. Though there is no dispute about the unauthorized nature of the exaction, it intends to keep the unrefunded portions of its ill-gotten gains—a few billion dollars. Indeed, the Service fares better than the Las Vegas casinos: even when they lose, they win. Since no law "unequivocally" requires the IRS to do the right thing, they have the discretion to do wrong. The taxpayers are out of luck. It was not always thus.

I join—without reservation—the court's jurisdictional conclusion. As for the merits, however, I cannot say the same. The Service's recalcitrance is disconcerting, and I do not share my colleagues' confidence that no law imposes a duty upon the Service to create a *workable* refund scheme. In addition, I view the majority's EAJA analysis as reasonable, but incomplete. I therefore respectfully dissent.

2

I

This appeal is not a refund case. But it is about refunds. It has long been understood that there is a part-legal, part-equitable right to reclaim what the government has wrongfully taken away. *Cf. Stone v. White*, 301 U.S. 532, 534 (1937) ("The action, brought to recover a tax erroneously paid, although an action at law, is equitable in its function."). Before Congress let down a narrow drawbridge into the otherwise impenetrable fortress of sovereign immunity so that taxpayers could seek recovery directly from the United States, federal courts entertained *indebitatus assumpsit* suits against the collectors whom the taxpayers paid. *See City of Phila. v. The Collector*, 72 U.S. (5 Wall.) 720, 732–33 (1866) ("[The] [a]ppropriate remedy to recover . . . money paid under protest on account of duties or taxes erroneously or illegally assessed, is an action of assumpsit for money had and received."). This curious fiction existed as an end-run around sovereign immunity, *see id.* at 733, and was long recognized as such, *see George Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 382–83 (1933) ("A suit against a collector . . . is to-day an anomalous relic of bygone modes of thought . . . .").

The fiction, like most, caused a few headaches. *See* William T. Plumb, Jr., *Refund Suits Against Collectors*, 60 HARV. L. REV. 685, 697–98 (1947) (describing the procedural pitfalls commonly encountered by taxpayers attempting to obtain refunds from collectors). But it endured because taxpayers needed *some* workable mechanism to recover funds illegally demanded. Refunds were considered to be obligations of "natural justice and equity," not gifts of statutory grace. *See Cary v. Curtis*, 44 U.S. (3 How.) 236, 246–47 (1845); *see also Bull v. United States*, 295 U.S. 247, 260 (1935) ("In a proceeding for the collection of estate tax, the United States through a palpable mistake took more than it

was entitled to. Retention of the money *was against morality and conscience.*" (emphasis added)). And that is no less true today.

The Service has maintained it has no affirmative obligation to provide refunds. Nearly 170 years ago, Justice Story pointed out the problem with the Service's position. When the Court in *Cary v. Curtis*, 44 U.S. (3 How.) 236 (1845), interpreted a newly revised statute as *precluding* suits against collectors, *see id.* at 244, Justice Story explained that depriving taxpayers of all recourse for challenging wrongful collections is repulsive to the constitutional tradition. To him, the question was

> [w]hether Congress have a right to take from the citizens all right of action in any court to recover back money claimed illegally, and extorted by compulsion, by its officers under color of law, but without any legal authority, and thus to deny them all remedy for an admitted wrong, and to clothe the Secretary of the Treasury with the sole and exclusive authority to withhold or restore that money according to his own notions of justice or right?

*Id.* at 253 (Story, J., dissenting). He never arrived at an answer, but he felt no need to—the idea was so unimaginable that Justice Story felt Congress could not have possibly intended a dramatic measure that would trigger a structural constitutional crisis. *See id.* at 257. In the end, he was right—Congress apparently did not intend the bar against collector suits, and it patched the law in record time. *See* George Stewart Brown, *A Dissenting Opinion of Mr. Justice Story Enacted as Law Within Thirty-Six Days*, 26 VA. L. REV. 759, 760 (1940) ("In thirty-six days Congress passed, and President Tyler signed, [the law] which recalled the majority

ruling in [*Cary*] and made Judge Story's opinion the law of the land.").

As the Service has made amply clear, there are "off-label" ways a taxpayer can take back the money he never owed in the first place. *See* Appellee's Br. at 22 ("[The Service] announced that it would continue to process claims for refund of the defunct telephone tax, either on Form 843 or on the 1040 series of income tax returns . . . .").[1] But this approach requires some faith that the Service will agree to honor a taxpayer's claim without having its fingers crossed behind its back. It could instead choose to be capricious and deny the refund, citing the taxpayer's failure to complete a refund process that, if depicted, looks something like an M.C. Escher drawing. *Cf. Cohen I*, 578 F.3d at 11 ("According to the IRS, taxpayers should have realized all the options the Service said were closed to them—using forms that proclaim their inapplicability in bold letter or filing informal claims that could not be perfected—were nonetheless sufficient to fulfill their administrative refund obligations and to serve as a prerequisite to judicial review."). And the Service could point to that failure as the basis for denying judicial review. *See id.* at 10 ("The 'usual statutory procedures for claiming a refund of tax,' provide no avenue by which individual taxpayers can

---

[1] As we noted in *Cohen I*, Form 843 facially does not allow for an excise-tax refund claim. *See* 578 F.3d at 9–10. It is unclear whether the 1040 series is still a viable claim mechanism, as the regulation that permitted the use of that series for excise-tax refund claims was prospectively vacated. *See* I.R.S. Notice 2006-50 ("Forms 1040 (series), 1041, 1065, 1120 (series), and 990-T will include a line for requesting the overpayment amount.").

fulfill their obligations in order to seek judicial review." (citation omitted)).[2]

What a racket.  To quote Justice Story, "[w]here then is the remedy which is supposed to exist?"  *Cary*, 44 U.S. at 256 (Story, J., dissenting).  The Service's answer?  Refunds are given by its grace alone.  *See* Appellee's Br. at 37–38 ("Nothing in the Internal Revenue Code or regulations thereunder requires the IRS to develop a scheme to achieve the making of refunds of any tax to taxpayers who have made no claim.").  But, once again, Justice Story provides an apt rejoinder:

> No court, no jury, nay, not even the ordinary rules of evidence, are to pass between [the Treasury] and the injured claimant, to try his rights or to secure him adequate redress. . . . So that in most, if not in all cases where a controversy arises, the Secretary of the Treasury has already pronounced his own judgment.  Of what use then, practically speaking, is the appeal to him, since he has already given his decision?

*Cary*, 44 U.S. at 256–57.

To remedy an agency's failure to act, the agency's action must be "legally required" or "unlawfully withheld."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004).  Nowhere in the APA does it say that the obligation must inhere in statute, as the court seems to suggest.  *See* Maj. Op. at 8 ("A court's authority to remedy either type of error depends entirely on the *underlying statutory obligation* of the

---

[2] For the plaintiffs of this case, of course, the Service will suggest the statute of limitations is an insurmountable hurdle barring any further efforts at obtaining redress.

agency." (emphasis added)). If the structure of the Constitution—and perhaps other provisions therein—compels an agency to provide a workable refund scheme, that should suffice for the APA. After all, the Constitution is law, and a supreme one at that. *See* U.S. CONST. art. VI, cl. 2.

The Appellants' position—and the court's *arguendo* assumption—that § 7422(a) imposes some sort of duty to provide a workable refund scheme—seems dubious. Nowadays, to treat a statute as both jurisdictional and substantive, as the Appellants suggest we do with § 7422(a), is odd. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."); *see also id.* (noting "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue"). *But see United States v. Mize*, 756 F.2d 353, 355–56 (5th Cir. 1985) (concluding the definition of "member bank" and "insured bank" for purposes of a bank fraud statute "serve[d] a dual purpose, constituting both a jurisdictional predicate and an essential substantive element of the criminal offenses"), *overruled on other grounds by United States v. Olano*, 507 U.S. 725 (1993). But what about the Tax Code itself, in addition to the long-understood common law refund right? Surely, if the Code refers to a right of refund in all but substance, we can infer that right and a duty arising therefrom. *See, e.g.*, 26 U.S.C. §§ 6415, 6511. After all, in *City of Philadelphia v. The Collector*, 72 U.S. (5 Wall.) 720 (1866), that is precisely what the Court did—infer the right from the statutory scheme. *See id.* at 730 ("On the contrary, the several acts of Congress for the assessment and collection of internal duties contain many provisions wholly consistent with any such theory, and which, when considered together,

afford an entirely satisfactory basis for the opposite conclusion.").

The majority alternatively posits the Secretary has fulfilled whatever duty is owed; because he possesses "great discretion to design the details," no further action can be compelled. *See* Maj. Op. at 8. The duty, however, is to create a *workable* refund scheme. What might work well to correct an individual overpayment is a completely inadequate response to a systemic irregularity. If one looks at the Service's voluminous forms, announcements, notices, and rules, one would see a labyrinth with no exit. That makes me quite reluctant to join the court's conclusion about the adequacy of the district court's remand order.

## II

Nor do I think the mere presence of a dissenting opinion gives "substantial justification" to the Government's position. The district court concluded there was substantial justification because of (1) a reasoned district court opinion that we ultimately disagreed with; and (2) a dissent by three members of an *en banc* court. The court's opinion relies on only the latter. But neither consideration should be the basis of denying an EAJA award. *See United States v. Paisley*, 957 F.2d 1161, 1167 (4th Cir. 1992) ("As a practical matter, the substantial justification issue cannot be transformed into an up-or-down judgment on the relative reasoning powers of Article III judges who may have disagreed on the merits of a Government litigation position.").

First, Judge Urbina's opinion on the plaintiffs' APA claims cannot be the basis for determining the Government's position was substantially justified. "The most powerful indicator of the reasonableness of an ultimately rejected

position is a decision on the merits and the rationale which supports that decision." *Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995). If a district court's contrary opinion can provide the Government with substantial justification, then a district court theoretically can never award EAJA fees in cases involving an appeal that does not result in affirmance. Surely, attorney's fees do not depend upon a plaintiff's success at *every* stage of litigation.

As for the *en banc* dissent, I do not think it to be as potent as the court makes it out to be. For purposes of the EAJA, I put little stock into the "exceptional importance" language of Rule 35. Improbable as it may sound, there exists a possibility that a case presenting a question of exceptional importance can nevertheless draw unanimous agreement from an *en banc* court. *See, e.g.*, *In re Sealed Case No. 97-3112*, 181 F.3d 128 (D.C. Cir. 1999) (en banc) (deciding a case with no dissents or concurrences in the judgment only, despite a contrary panel opinion); *see also id.* at 142 (Edwards, C.J. and Tatel, J., concurring) ("We originally viewed this case as turning on the difference between two distinct departure factors . . . but now we are persuaded otherwise."); *id.* at 144 (Sentelle, J., concurring) ("I do not disagree with any part of the court's thorough opinion affirming the district court."); *id.* at 145 (Henderson, J., concurring) ("I wholeheartedly agree with the majority's holding which disposes of this case with clarity and in full accord with the decisions of courts, including ours, that have ruled on the issue.").

Rehearing or no rehearing, a district court should certainly *consider* whether there is a dissenting opinion in appellate consideration of the merits of a case. But dissent alone cannot provide the Government with substantial justification. *See EEOC v. Clay Printing Co.*, 13 F.3d 813, 816 (4th Cir. 1994) ("We agree that the dissenting judge's

views should be considered, but this factor alone (and it is alone) is not enough to convince us that the district court's assessment of the case constituted an abuse of discretion."). This is especially true when the Government's lack of justification is plainly obvious. *See Friends of Boundary Waters Wilderness*, 53 F.3d at 885.

But the majority's reliance on judicial dissent is but a quibble. The Service's unwillingness to own up to its confusing and dysfunctional "refund scheme" is cause enough for granting an EAJA award.

The EAJA requires the Government to act reasonably during *all* stages of litigation, from the inception of agency action (or lack thereof) to the conclusion of judicial review. *See Hill v. Gould*, 555 F.3d 1003, 1006 (D.C. Cir. 2009) (noting the Government's position is "substantially justified" if "the underlying agency action and the legal arguments in defense of the action had 'a reasonable basis both in law and fact'" (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988))); *see also U.S. SEC v. Zahareas*, 374 F.3d 624, 627 (8th Cir. 2004) ("[T]he government must show 'that it acted reasonably at all stages of the litigation." (citation omitted)); *Keasler v. United States*, 766 F.2d 1227, 1231 (8th Cir. 1985) ("[T]he 'position of the United States' includes the government's position at both the prelitigation and litigation stages."). Here, the Service may have been justified as to the jurisdictional issue. But what about the events that led up to this case, which must be considered under the EAJA?

Throughout this litigation, one of the Service's main contentions has been that refunds are readily available under its current schemes, even notwithstanding Notice 2006-50. In fact, that's not true at all. The confusing morass of a process that we identified in *Cohen I* still exists, having been present

in this case since its genesis. *See* Oral Arg. Tr. at 33 (acknowledging the "confusing language" of Form 843 and conceding the Service's failure to rectify the confusion). *Compare* Oral Arg. Tr. at 26 ("[F]or taxes other than income taxes, which would include this excise tax[,] you use form 843 . . . ."), *with* I.R.S. Announcement 2012-16, 2012-18 I.R.B. 876 (Apr. 5, 2012) ("Taxpayers should make their requests on the appropriate 2006 income tax return. . . . Taxpayers who wish to request actual amounts of excise taxes paid rather than the safe harbor amounts described in Notice 2007-11 should use Form 8913 . . . ."), I.R.S. Form 843, *Claim for Refund and Request for Abatement* ("Do not use Form 843 if your claim or request involves . . . an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290."), *and Cohen I*, 578 F.3d at 9–10 ("Form 843, however, does not permit this type of refund claim."). It is one thing to say the regulatory scheme provides for a workable refund process; it is another to present a procedural boondoggle, where refunds are available only with the governmental equivalent of a wink and nod.

So when the Service says a workable refund scheme exists under the current legal and regulatory regime, its contention is, at best, unreasonable, and, at worst, dishonest. Though it may be only a small part of the Service's case, that is reason enough for me to conclude the district court abused its discretion in declining to award fees to the *Sloan* plaintiffs.

III

Once upon a time, public law concerned itself with notions of what was morally right, not just what was minimally required. But, as counsel for the Service has repeatedly reminded us throughout this litigation, those days are part of the dim (and not to be recaptured) past. *See*

Appellee's Br. at 37 ("After making the concession that limited the scope of 'toll telephone service' to which I.R.C. § 4252(b)(1) applied, the IRS was by no means required to notify every taxpayer potentially entitled to a refund, or even to publicize the availability of refunds."). These days, no matter how unwarranted its exactions, whether the Service returns anything to the taxpayers—when circumstances do not fit the usual paradigm—is a decision within its sole discretion. Following the Service's reasoning to its logical conclusion, the more larcenously it behaves, the lighter its obligations to plundered taxpayers become. No doubt this is a sign of the times, but it seems more an artifact of an administrative state gone deeply awry.